UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| JUSTIN L. FERRELL,<br><br>    Plaintiff,<br><br> vs.<br><br>RYAN FITZPATRICK, Correctional Officer at Meade County Jail, in his individual and official capacity; STACEY ULRICH, Acting Supervisor at Meade County Jail, in her individual and official capacity; RON MERWIN, Sheriff at Meade County Sheriff's Office, in his individual and official capacity; BOB DOE, Administrator at Meade County Jail, in his individual and official capacity; BERNARD TUILID, Morning Supervisor at Meade County Jail, in his individual and official capacity; DAN DOE, Correctional Officer at Meade County Jail, in his individual and official capacity; MICHAEL DOE, Correctional Officer at Meade County Jail, in his official capacity; KELLY SEUR, Sheriff at Perkins County, in his official capacity; DEPUTY HUMPHRIES, Deputy Sheriff at Meade County Sheriff's Office, in his individual and official capacity; DEPUTY DOE, Deputy Meade County Sheriff's Office, in his individual and official capacity; MONTE ROPPERS, Position Supervisor at Meade County Jail, in his individual and official capacity; KIMBERLY DOE, Correctional Officer at Meade County Jail, in her individual and official capacity; and TY ROPPERS, Correctional Officer at | CIV. 17-05084-JLV<br><br><br>ORDER |

| Meade County Jail, in his individual and official capacity; | |
|---|---|
| Defendants. | |

Plaintiff Justin L. Ferrell, a pretrial detainee at the Pennington County Jail, filed his first amended complaint under 42 U.S.C. § 1983 against the defendants. (Docket 8). Mr. Ferrell also filed a motion for leave to proceed *in forma pauperis,* a prisoner trust account report and a motion to appoint counsel. (Dockets 9, 10 and 11).

Section 1915 of Title 28 of the United States Code, as amended by the Prison Litigation Reform Act ("PLRA"), governs proceedings filed *in forma pauperis.* When a prisoner files a civil action in forma pauperis, the PLRA requires a prisoner to pay an initial partial filing fee when possible. See 28 U.S.C. § 1915(b)(1). The initial partial filing fee is calculated according to § 1915(b)(1), which requires a payment of 20 percent of the greater of:

(A) the average monthly deposits to the prisoner's account; or

(B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Id.

In support of his motion, Mr. Ferrell provided a copy of his prisoner trust account report signed by an authorized jail official. (Docket 10). The report shows an average monthly deposit since he arrived at the institution at which he is currently incarcerated of $40, an average monthly balance of $0, and a current balance of $0. Id. Based on this information, the court grants Mr.

Ferrell leave to proceed *in forma pauperis* provided he pays an initial partial filing fee of $8, which is 20 percent of $40. 28 U.S.C. § 1915(b)(1). Mr. Ferrell must pay this initial partial filing fee by **February 23, 2018**. If the court does not receive payment by the deadline, this matter may be dismissed. Mr. Ferrell may request an extension of time if needed.

Under 28 U.S.C. § 1915A, the court must review a prisoner complaint and identify cognizable claims or dismiss the complaint if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. This screening process "applies to all civil complaints filed by [a] prisoner[], regardless of payment of [the] filing fee." Lewis v. Estes, 242 F.3d 375 at *1 (8th Cir. 2000) (unpublished) (citing Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999)). During this initial screening process, the court must dismiss the complaint in its entirety or in part if the complaint is "frivolous, malicious, or fails to state a claim upon which relief may be granted" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

The court may dismiss a complaint under §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim as "the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989).

Because Mr. Ferrell is proceeding *pro se*, his pleading must be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v.

3

Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985); Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007).

## DISCUSSION

### A. Official Capacity Claims

Mr. Ferrell's official capacity claims are the equivalent of claims against Meade or Perkins County. "Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official [county[ policy' caused their injury." Connick v. Thompson, 563 U.S. 51, 60-61 (2011) (quoting Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691 (1978)). "[I]n other words, a [county] cannot be held liable under § 1983 on a *respondeat superior* theory." Monell, 436 U.S. at 691. "Official [county] policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. . . . These are actions for which the [county] is actually responsible." Connick, 563 U.S. at 61 (internal quotation marks, citations and brackets omitted). Mr. Ferrell has not alleged the existence of any custom or policy of Meade or Perkins County that was a moving force behind the alleged constitutional violations. Because Mr. Ferrell sues Michael Doe and Kelly Seur in their official capacities only, the claims against those

4

defendants are dismissed for failure to state a claim upon which relief may be granted. For the same reasons, the remaining official capacity claims against defendants are dismissed for failure to state a claim upon which relief may be granted.

**B. Declaratory and Injunctive Relief**

Because Mr. Ferrell is no longer incarcerated at the Perkins or Meade County Jail, his claims for declaratory and injunctive relief are moot. A prisoner's transfer to a different facility renders his request for injunctive relief moot. See Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985); see also Vosburg v. Solem, 845 F.2d 763, 770 (8th Cir. 1988) (holding that an inmate's release renders moot any claim for injunctive relief relating to his conditions of incarceration). This is true even if the prisoner argues he might, at some future time, be reincarcerated at the same facility. Smith v. Hundley, 190 F.3d 852, 855 (8th Cir. 1999). Mr. Ferrell's claims for declaratory and injunctive relief are denied moot.

**C. Fourteenth Amendment Claims**

Mr. Ferrell's complaint contains seven counts, five of which claim violations of Mr. Ferrell's Fourteenth Amendment rights. (Docket 8). Counts 1, 2, 3, 5 and 6 involve threats to Mr. Ferrell's safety and certain defendants' use of excessive force. A pretrial detainee's right to be free from excessive force arises under the Due Process Clause of the Fourteenth Amendment. Edwards v. Byrd, 750 F.3d 728, 732 (8th Cir. 2014) (citing Putman v. Gerloff, 639 F.2d 415, 419 (8th Cir. 1981)). "[T]he Due Process Clause affords pretrial detainees

5

at least as much protection as the Eighth Amendment provides to convicted prisoners." Id. (citing Owens v. Scott Cty. Jail, 328 F.3d 1026, 1027 (8th Cir. 2003)). If the alleged use of force violates the Eighth Amendment, it necessarily violates the Fourteenth Amendment. Id.; see also Holden v. Hirner, 663 F.3d 336, 341 (8th Cir. 2011) ("Pretrial detainee § 1983 claims are analyzed under the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment prohibition of cruel and unusual punishment.").

"When confronted with a claim of excessive force alleging a violation of the Eighth Amendment, the core judicial inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " Santiago v. Blair, 707 F.3d 984, 990 (8th Cir. 2013) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). Factors to be considered in deciding whether a particular use of force was reasonable are whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officer, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury. Id.; see also Hudson, 503 U.S. at 3. A *de minimus* use of force that is not "repugnant to the conscience of mankind" generally does not constitute cruel and unusual punishment. Hudson, 503 U.S. at 9-10. The absence of a "significant injury" is not dispositive, but it does provide some indication of the amount of force applied. Wilkins v. Gaddy, 559 U.S. 34, 37-38 (2010) ("The Eighth Amendment's prohibition of cruel and unusual punishments necessarily

6

excludes from constitutional recognition *de minimus* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. An inmate who complains of a push or shove that causes no discernable injury almost certainly fails to state a valid excessive force claim.") (internal citations and quotations omitted).

Count 1 alleges that Ron Merwin and Bob Doe showed deliberate indifference to an unreasonable threat to Mr. Ferrell's safety. (Docket 8 at 7). Mr. Ferrell claims injuries to his left wrist from being held in a restraint chair and "[m]ental fear and anguish of fire safety due to no fire exit and no escape route posted." Id.

In count 2, Mr. Ferrell claims his Fourteenth Amendment rights were violated by the use of excessive force by Stacy Ulrich, Ryan Fitzpatrick, Bob Doe and Deputy Humphries. Id. at 9-10. He alleges he was placed in a restraint chair and, when he was returned to his cell, he was not permitted to leave his cell. Id. Mr. Ferrell claims the excessive force caused chronic wrist pain, panic attacks, anxiety and fear. Id.

Count 3 asserts Mr. Ferrell's Fourteenth Amendment rights were violated when he was placed in imminent fear and suffered mental anguish by Kimberly Doe, Dan Doe and Monte Roppers. Id. at 11-12. Mr. Ferrell alleges certain defendants attempted to move him from B Pod to the A Pod in the Meade County jail and threatened to use the restraint chair if Mr. Ferrell did not cooperate. Id. Mr. Ferrell became so upset that he was transferred to a

hospital. Id.  Mr. Ferrell alleges he suffered from an elevated heart rate, PTSD, mental anguish and terror.  Id.

Count 5 alleges Mr. Ferrell's Eighth Amendment rights to be free from cruel and unusual punishment were violated when he was placed in a restraint chair by Ty Roppers, Deputy Doe and Bernard Tuilid.  Id. at 14-15.  Mr. Ferrell claims he suffers from neck pain, right-shoulder pain, fear of further injury, PTSD, anxiety, mental anguish and severe terror.  Id. at 14-16.

Mr. Ferrell claims in count 6 that his Eighth Amendment right to be free from cruel and unusual punishment was violated when he was strapped into a restraint chair a second time by Monte Roppers, Ron Merwin and Bob Doe.  Id. at 17.  Despite requests to be released, Mr. Ferrell alleges he was forced to urinate on himself twice and was later denied a shower to clean himself.  Id.  Mr. Ferrell also alleges the restraints were applied too tightly on his wrists by Monte Roppers and Bob Doe.  Id.  Mr. Ferrell freed one of his arms only to be re-restrained more tightly.  Id.  Mr. Ferrell claims Ron Merwin watched all of this happen.  Id.

Mr. Ferrell's complaint alleges that force was maliciously meant to cause harm.  He claims he was terrorized and restrained despite cooperating with officers.  (Docket 8).  Upon careful review of Mr. Ferrell's allegations, Mr. Ferrell adequately states a claim at this stage in the following causes of action: count 2 against Stacy Ulrich and Ryan Fitzpatrick; count 5 against Deputy Doe; and count 6 against Monte Roppers.  Mr. Ferrell claims that Stacy Ulrich put Mr. Ferrell in the restraint chair "just for corporal punishment" after he asked

8

Stacy Ulrich to let him out of his cell after he accidentally locked himself inside his cell. Id. at 9-10. Mr. Ferrell alleges that Ryan Fitzpatrick twisted Mr. Ferrell's wrist, knowing it was injured, and secured the restraints too tight. Id. Mr. Ferrell claims Deputy Doe slammed him into a restraint chair while his hands were still cuffed behind his back and held a taser to his neck. Id. at 15. Mr. Ferrell asserts Monte Roppers denied him a shower after he urinated on himself twice and Monte Roppers forced Mr. Ferrell back into the restraint chair for banging on his cell door. Id. at 17.

Mr. Ferrell fails to state a claim in these causes of action: count 2 against Deputy Humphries; count 3 against Dan Doe and Kimberly Doe; and count 5 against Bernard Tuilid and Ty Roppers. Although Dan Doe and Kimberly Doe allegedly threatened to use the restraint chair to transfer Mr. Ferrell (Id. at 12), "[v]erbal threats do not constitute a constitutional violation." Martin v. Sargent, 780 F.2d 1334, 1339 (8th Cir. 1985). Mr. Ferrell also claims "[Deputy] Humphries came when I asked to speak with [a Deputy] about criminal charges." (Docket 8 at 10). "He was biased but did take [pictures] but failed to protect me from future injury." Id. Mr. Ferrell fails to allege any facts that Deputy Humphries was aware of facts from which an inference could be drawn that Mr. Ferrell faced a serious risk of harm and that Deputy Humphries actually drew such an inference. Mr. Ferrell does not explain or specify what further injury he believed he faced, whether he sought the protection of the defendants, or anything else that one typically sees in well-founded failure to protect cases. Mr. Ferrell alleges Bernard Tuilid denied him a shower and an

9

hour out of his cell when he was in lockdown after an altercation with another inmate.  Id. at 14.  "Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights."  Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir.1990).  Mr. Ferrell does not allege Bernard Tuilid was responsible for his placement in lockdown or for the denial of shower facilities.  Mr. Ferrell alleges that Ty Roppers denied him personal possessions when in lockdown and ordered that Mr. Ferrell be placed in the restraint chair after Mr. Ferrell claims to have "got upset" with Ty Roppers.  (Docket 8 p. 15).  Mr. Ferrell further claims that Ty Roppers warned assisting officers that Mr. Ferrell's wrist was injured and directed assisting officers to take the cuffs off Mr. Ferrell.  Id. at 15.  Mr. Ferrell fails to demonstrate use of excessive force or disregard for his safety by Ty Roppers.

Mr. Ferrell has not alleged a basis for liability against certain defendants in the following causes of action: count 1 against Ron Merwin and Bob Doe; count 2 against Bob Doe; count 3 against Monte Roppers; and count 6 against Ron Merwin and Bob Doe.  "A supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity."  White v. Holmes, 21 F.3d 277, 280 (8th Cir. 1994).  Mr. Ferrell claims Ron Merwin "maliciously allowed unfair treatment," "knew about Montana fires," and "watched all this happen."  (Docket 8 at 7-8, 17).  Mr. Ferrell claims Bob Doe "allow[ed] unnecessary and excessive force," did not release Mr. Ferrell from restraints, and did not loosen restraints after Monte Roppers tightened them.

Id. at pp. 5, 10, and 17.  Mr. Ferrell fails to attribute anything to Monte Roppers beyond the allegation that he was the supervisor in count 3.  Id. 11.

Upon careful review of Mr. Ferrell's allegations, Mr. Ferrell adequately states a claim in the following causes of action: count 2 against Stacy Ulrich and Ryan Fitzpatrick; count 5 against Deputy Doe; and count 6 against Monte Roppers.

Mr. Ferrell fails to state a claim in these causes of action: count 2 against Deputy Humphries; count 3 against Dan Doe and Kimberly Doe; and count 5 against Bernard Tuilid and Ty Roppers.  Mr. Ferrrell has not alleged a basis for liability against certain defendants in the following causes of action: count 1 against Ron Merwin and Bob Doe; count 2 against Bob Doe; count 3 against Monte Roppers; and count 6 against Ron Merwin and Bob Doe.

**D. Retaliation**

Count 4 alleges Mr. Ferrell's Fourteenth Amendment rights were violated when he was retaliated against by Ron Merwin and Bob Doe for filing grievances.  Id. at 13.  After filing grievances, Mr. Ferrell alleges that he was "locked down" and suffered mental anguish.  Id.  To state a claim for retaliation in violation of the First Amendment, Mr. Ferrell "must 'show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity.'" Spencer v. Jackson Cty. Mo., 738 F.3d 907, 911 (8th Cir. 2013) (citing Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004)).  Filing a

grievance is a protected activity. Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989). The defendants' retaliation consisted of making up rules to punish Mr. Ferrell, such as not being able to walk in circles in the pod or talk on the phone while women were in the recreation room nearby. (Docket 8 at p. 13). And Mr. Ferrell alleges this treatment was caused by filing grievances. Id. Having reviewed Ferrell's retaliation claim, the court finds Mr. Ferrell adequately states a claim for the purposes of this initial review.

**E. Access to the Courts**

In count 7, Mr. Ferrell alleges Monte Roppers and Ron Merwin did not transfer his legal mail from the Meade County Jail to the Pennington County Jail. Id. at 19. Ferrell claims he suffered mental anguish. Id. "The taking of an inmate's legal papers can be a constitutional violation when it infringes his right of access to the courts." Goff v. Nix, 113 F.3d 887, 892 (8th Cir. 1997) (citation omitted). "[T]he destruction or withholding of inmates' legal papers burdens a constitutional right, and can only be justified if it is reasonably related to a legitimate penological interest." Id. Defendants have not been served and have not had a chance to justify their actions. At this point, it is premature to dismiss Ferrell's claim. Mr. Ferrell sufficiently states a denial of access to the courts claim upon which relief may be granted against Monte Roppers and Ron Merwin.

**F. Motion to Appoint Counsel**

Mr. Ferrell's motion to appoint counsel is denied. There is no constitutional or statutory right to court-appointed counsel in a civil case.

Phillips v. Jasper County Jail, 437 F.3d 791, 794 (8th Cir. 2006). The court in its discretion may appoint counsel to represent an indigent prisoner. Id. (citing 28 U.S.C. § 1915(e)). "The relevant criteria for determining whether counsel should be appointed include the factual complexity of the issues, the ability of the indigent person to investigate the facts, the existence of conflicting testimony, the ability of the indigent person to present the claims, and the complexity of the legal arguments." Id. The court finds appointment of counsel unnecessary in this case. Mr. Ferrell appears capable of articulating and presenting his claims. Further, the case does not present particularly complex factual or legal issues, and the court is familiar with the applicable legal standards.

Accordingly, it is

ORDERED that Mr. Ferrell's motion for leave to proceed *in forma pauperis* (Docket 2) is granted. Mr. Ferrell shall pay the initial partial filing fee of $8 by **February 23, 2018**.

IT IS FURTHER ORDERED that Mr. Ferrell's second motion for leave to proceed *in forma pauperis* (Docket 9) is denied as moot.

IT IS FURTHER ORDERED that, pursuant to 28 U.S.C. § 1915(b)(2), the institution having custody of Mr. Ferrell shall, whenever the amount in Mr. Ferrell's inmate account exceeds $10, forward monthly payments that equal 20 percent of the funds credited to the account the preceding month to the Clerk of Court for the United States District Court, District of South Dakota, until the $350 filing fee is paid in full.

IT IS FURTHER ORDERED that the Clerk of Court is directed to send a copy of this order to the appropriate official at plaintiff's institution.

IT IS FURTHER ORDERED that count 3—as it relates to Michael Doe—and counts 1 and 4—as they relate to Kelly Seur—are dismissed for failure to state a claim upon which relief may be granted pursuant to §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

IT IS FURTHER ORDERED that Mr. Ferrell's official capacity claims are dismissed for failure to state a claim upon which relief may be granted pursuant to §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

IT IS FURTHER ORDERED that the following causes of action are dismissed pursuant to §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim upon which relief may be granted: count 1 against Ron Merwin and Bob Doe; count 2 against Deputy Humphries and Bob Doe; count 3 against Dan Doe, Kimberly Doe and Monte Roppers; count 5 against Bernard Tuilid and Ty Roppers; and count 6 against Ron Merwin and Bob Doe.

IT IS FURTHER ORDERED that the Clerk shall send blank summons forms to Mr. Ferrell so he may cause the summons and amended complaint to be served upon the remaining defendants.

IT IS FURTHER ORDERED that the United States Marshal shall serve a copy of the amended complaint (Docket 8), summons, and this Order upon defendants as directed by Mr. Ferrell. All costs of service shall be advanced by the United States.

IT IS FURTHER ORDERED that defendants must serve and file an answer or responsive pleading to Mr. Ferrell's remaining claims in the amended complaint on or before 21 days following the date of service.

IT IS FURTHER ORDERED that Mr. Ferrell will serve upon defendants, or, if appearance has been entered by counsel, upon their counsel, a copy of every further pleading or other document submitted for consideration by the court. He will include with the original paper to be filed with the Clerk of Court a certificate stating the date and that a true and correct copy of any document was mailed to defendants or their counsel.

IT IS FURTHER ORDERED that Mr. Ferrell will keep the court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the court's Local Rules while this case is pending.

IT IS FURTHER ORDERED that Mr. Ferrell's motion to appoint counsel (Docket 11) is denied.

Dated February 2, 2018.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE